SHEPHERD, C.J.
Village Carver Phase I, LLC (“Village Carver”) appeals an order of dismissal with prejudice of its amended complaint, seeking recovery under an owner’s policy of title insurance for losses associated with the demolition and redesign of a portion of *109 an affordable housing project on which was unearthed an abandoned cemetery and human remains during the course of construction. Village Carver argues the title policy affords it coverage for the losses because appellee, Fidelity National Title Insurance Company (“Fidelity National”), failed to except from coverage under the policy the statutory easement for ingress and egress provided to “relatives and descendants of any person buried in a cemetery [in this state] for the purpose of visiting the cemetery.” See § 704.08, Fla. Stat. (2008).[1] We disagree.
Analysis
The cemetery discovered during the course of construction in this case was created by a deed recorded in the public records in 1908. The title insurance policy in this case was issued one-hundred years later on December 24, 2008. Although the deed was recorded and searchable, Village Carver properly concedes that the Florida Marketable Record Title to Real Property Act (MRTA), § 712.01, et seq., Fla. Stat. (2008), relieved Fidelity National of any legal obligation to search the chain of title pertaining to the insured property back to that time. Nor did Fidelity National have actual knowledge of the existence of the cemetery at the time it issued the title insurance policy. Research, undertaken by the City of Miami Historic and Environmental Preservation Board after the discovery, revealed that the headstones and other cemetery markings had been removed by the time buildings were constructed on the property in 1948.
Village Carver asserts that coverage and liability nevertheless exist under the insurance policy[2] because Fidelity National had “implied notice of the existence of a cemetery and human remains in the ground” or alternately that “the mere possibility of the existence of an easement in favor of relatives renders the title unmarketable.”
Village Carver’s first ground for reversal fails for the same reason the existence of record of the 1908 deed does not educe liability under the policy. Section 627.7845(1) of the Florida Statutes merely requires a title insurer to perform a “reasonable title search” before issuing a title *110 insurance “commitment, endorsement, or policy.” Section 712.04 of the MRTA states that “[sjubject to s. 712.03,[3] a marketable record title is free and clear of all estates, interests, claims, or charges, the existence of which depends upon any act, title transaction, event, or omission that occurred before the effective date of the root of title.” § 712.04, Fla. Stat. (2011). “ ‘Root of Title’ means any title transaction purporting to create or transfer the estate claimed by any person and which is the last title transaction to have been recorded at least 30 years prior to the time when marketability is being determined. The effective date of the root of title is the date on which it was recorded.” § 712.01(2), Fla. Stat. (2011). It is uncontested that the 1908 deed was recorded more than thirty years before the effective date of the root of title in this case. The “implied notice” on which Village Carver relies “depends upon” the existence of the 1908 deed. § 712.04. The delivery and recording of that deed is indisputably “an act, title transaction, event, or omission that occurred before the effective date of the root of title” within the meaning of the MRTA. The Act represents a codified limitation on a title insurer’s obligation to research the public records in connection with the issuance of a title insurance policy. Village Carver’s attempt to charge Fidelity National with “implied notice” of the existence of the cemetery is excluded by law.
Village Carver, joined by the dissent, next contends that Fidelity National had an obligation to list section 704.08 as an exception to coverage under the insurance policy vel non. For this contention, Village Carver and the dissent place primary reliance on Blanton v. City of Pinel-las Park, 887 So.2d 1224 (Fla.2004). Their reliance is misplaced. The estate or interest at issue in Blanton was a statutory way of necessity, governed by section 704.01(2).[4] The “precise issue” addressed was “whether the [Marketable Record Ti- *111 tie to Real Property Act] applies to statutory ways of necessity.” The Supreme Court held that statutory ways of necessity are not subject to the provisions of the MRTA. The Court reasoned: “[Djeter-mining whether a landlocked owner has a valid claim to a statutory way of necessity requires only findings on the current status of the property — that the parcel is landlocked, that the parcel is outside a municipality, and that the parcel is being used or desired to be used for one of the enunciated purposes.” Blanton, 887 So.2d at 1232 (citing Roy v. Euro-Holland Vastgoed, B.V., 404 So.2d 410, 412 (Fla. 4th DCA 1981), quoting 25 Am.Jur.2d Easements & Licenses § 34, at 447-48) (second emphasis added). In the case before us, no one has sought to exercise a legal right or assert any interest pursuant to section 704.08. There has been no “act, title transaction, event or omission” giving rise to a claim under the title insurance policy, not to mention one “that occurred before the effective date of root of title.” § 712.04. Section 704.08 does not create an interest in real property. It creates nothing more than a personal privilege, exercisable in the future if (1) a relative or descendant of a person buried in the cemetery comes forward, and (2) he or she seeks to visit the cemetery.
 Village Carver confuses title insurance with casualty insurance. Title insurance is different from most other types of insurance. Title insurance policies are indemnity contracts against actual monetary loss resulting from specified causes, such as defects, liens and encumbrances existing on the date the insurance policy is issued. Title insurance policies do not insure against future occurrences. Village Carver and the dissent forget this critical distinction.
We affirm the decision of the trial court.
ROTHENBERG, J., concurs.

. Section 704.08 reads in full:
704.08. Cemeteries: right of ingress and egress for visiting or maintenance The relatives and descendants of any person buried in a cemetery shall have an easement for ingress and egress for the purpose of visiting the cemetery at reasonable times and in a reasonable manner. The owner of the land may designate the easement. If the cemetery is abandoned or otherwise not being maintained, such relatives and descendants may request the owner to provide for reasonable maintenance of the cemetery, and, if the owner refuses or fails to maintain the cemetery, the relatives and descendants shall have the right to maintain the cemetery.

. The policy's insuring clause states:
Subject to the exclusions from coverage, the exceptions contained in schedule B and the provisions of the conditions and stipulations hereof. Fidelity National Title Insur-anee Company, a California corporation, herein called the Company, insures as of date of policy shown in schedule A, against loss or damage, not exceeding the Amount of Insurance stated in Schedule A, and costs, attorneys’ fees and expenses which the Company may become obligated to pay hereunder, sustained or incurred by the insured by reason of:
1. Title to the estate or interest described in Schedule A being vested otherwise than as stated therein;
2. Any defect in or lien or encumbrance on such title;
3. Lack of a right of access to and from the land; or
4. Unmarketability of such title, (emphasis added)
Village Carver argues that coverage exists under the second and fourth bolded coverage clauses.

. Section 712.03 exempts from the provisions of the MRTA estates, interests, easements and use restrictions filed after the date of the root of title, renewals of previously filed deeds or muniments of title; public utility easements and rights of way in use; rights of persons in whose name the land is assessed on the county tax roles for a period of up to three years; and estates and interests held by the Trustees of the Internal Improvement Trust Fund or water management district created under Chapter 373 of the Florida Statutes or the United States. None of these exceptions are applicable in this case.

. The provision in effect in 2003 read as follows:
(2) Statutory way of necessity exclusive of common-law right.—
Based on public policy, convenience, and necessity, a statutory way of necessity exclusive of any common-law right exists when any land or'portion thereof outside any municipality which is being used or desired to be used for a dwelling or dwellings or for agricultural or for timber raising or cutting or stockraising purposes shall be shut off or hemmed in by lands, fencing, or other improvements of other persons so that no practicable route of egress or ingress shall be available therefrom to the nearest practicable public or private road. The owner or tenant thereof, or anyone in their behalf, lawfully may use and maintain an easement for persons, vehicles, stock, franchised cable television service, and any utility service, including, but not limited to, water, wastewater, reclaimed water, natural gas, electricity, and telephone service, over, under, through, and upon the lands which lie between the said shut-off or hemmed-in lands and such public or private road by means of the nearest practical route, considering the use to which said lands are being put; and the use thereof, as aforesaid, shall not constitute a trespass; nor shall the party thus using the same be liable in damages for the use thereof; provided that such easement shall be used only in an orderly and proper manner.
§ 704.01(2), Fla. Stat. (2003).